IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

CHALFONTE CONDOMINIUM APARTMENT
ASSOCIATION, INC.,

      Plaintiff,

v.

QBE INSURANCE CORPORATION, a foreign
corporation,

      Defendant.

_____/

## *COMPLAINT*

Plaintiff, Chalfonte Condominium Apartment Association, Inc. ("Chalfonte"), by and through the undersigned counsel, sues the Defendant, QBE Insurance Corporation ("QBE"), and states:

### *GENERAL ALLEGATIONS*

1. This is an action for damages in excess of $75,000 exclusive of interest, costs and attorneys' fees.

2. Pursuant to 28 U.S.C. §1332, this Court has subject matter jurisdiction because the amount in controversy exceeds $75,000, exclusive of interest, costs and attorneys' fees, and there is complete diversity of citizenship between the parties.

3. This is a first party bad faith case and concerns a claim made on an insured loss occurring in Palm Beach County in the State of Florida.

4. At all material times, Chalfonte was and is a condominium association and not-for-profit corporation organized and existing under the laws of the State of Florida, and was authorized

CASE NO._____

*Complaint*

to do, and is doing business in Palm Beach County, Florida. Chalfonte has its principal and only place of business in Palm Beach County, Florida.

5. Venue lies in the Southern District of Florida because, among other things, the Insurance Contract was entered into in Palm Beach County, Florida and provides insurance coverage for property located in Palm Beach County, Florida.

6. All conditions precedent to the filing of this action, including a determination of both liability and damages in the Underlying Action, have occurred and/or have been waived by QBE.

7. At all material times, QBE was and is a foreign corporation and insurance carrier, incorporated under the laws of the Commonwealth of Pennsylvania, that is authorized by the State of Florida pursuant to a letter of eligibility to transact insurance and that is transacting insurance in Palm Beach County, Florida, and throughout Florida.

8. Chalfonte's condominium property consists of three hundred seventy eight (378) condominium units in two high rise towers, common elements and other improvements located in Boca Raton, Palm Beach County, Florida.

9. In or about December 2004, QBE offered to provide commercial residential property coverage to Chalfonte for the twelve month period commencing January 1, 2005 in consideration for a premium of $287,857.00.

10. In or about December 2004, Chalfonte accepted QBE's offer to provide the coverage and paid the premium of $287,857.00.

11. Thereafter, QBE issued Certificate of Insurance No. QF1921-10 to Chalfonte ("QBE policy" or "Insurance Contract"). The intent and purpose of the QBE policy was to provide

2

Rosenbaum Mollengarden Janssen & Siracusa, PLLC
250 Australian Avenue South, Suite 500, West Palm Beach, Florida 33401
Telephone: (561) 653-2900; Facsimile: (561) 820-2542

CASE NO._____

*Complaint*

commercial lines residential coverage, including, but not limited to, coverage for hurricanes, to its named insured and additional insureds, for direct physical loss to the condominium property.

12. On or about October 24, 2005, the condominium property at Chalfonte sustained significant damages as a result of Hurricane Wilma.

13. Having sustained millions of dollars in damages, Chalfonte timely reported its claim for damages caused by Hurricane Wilma to QBE.

14. Through its public adjuster, Chalfonte submitted its damage estimate to QBE on December 18, 2005 and requested to be paid for the damages as provided in the Insurance Contract. QBE failed to address Chalfonte's damage estimate.

15. When QBE failed to resolve or adjust Chalfonte's claim, Chalfonte voluntarily submitted a sworn proof of loss to QBE on or about July 12, 2006, to expedite the process.

16. Chalfonte was forced to wait nearly nine months after Hurricane Wilma struck for QBE to investigate and begin to adjust the claim.

17. Under the terms of the Insurance Contract, QBE was required to "determine the value of lost of damaged property" and pursuant to Florida law, to give Chalfonte "notice of its intentions within 30 days after we receive the sworn proof of loss."

18. QBE ignored Chalfonte's sworn proof of loss, abdicated its duty to "determine the value of lost or damaged property," failed to give "notice of its intentions" under the Insurance Contact, and refused to ever resolve or fully adjust Chalfonte's claim.

19. QBE hired independent adjuster Robert Sansone and his company, Interloss, Inc. to estimate the damages and adjust Chalfonte's claim.

CASE NO._____
*Complaint*

20. Through Interloss, QBE engaged John Wareham ("Wareham"), an individual who pled *nolo contendere* to charges of insurance fraud in Broward County, Florida and who ultimately had his Florida insurance adjusters' license revoked because he misrepresented his prior criminal convictions (including for insurance fraud) and *nolo contendere* plea when he applied for the license, to serve as the main estimator and/or adjuster for Chalfonte's claim for Hurricane Wilma damages.

21. When QBE did finally send its experts to inspect Chalfonte's condominium property, QBE's engineer Daniel Lavrich and QBE's other experts, never properly examined the property for damage, and affirmatively tried to dismiss or minimize the damages seen.

22. QBE hired engineers, inspectors, adjusters and estimators in an attempt to minimize the damages that Chalfonte sustained from Hurricane Wilma. QBE engages in a general business practice of minimizing damages through photographs, scope notes, experts, adjusters, estimators and other personnel and in particular, estimates and adjusts claims in many if not most cases under the hurricane deductible as a business practice notwithstanding the amount of actual damages sustained. Further, QBE has no loss adjustment guidelines or standards for its estimators to follow for the investigation of claims and falsely claims that it has no underwriting guidelines.

23. Chalfonte requested that QBE's adjuster, Robert Sansone, provide his estimate of the loss to Chalfonte.

24. QBE's adjuster failed to respond to the request and in fact, QBE did not produce an estimate of Chalfonte's loss until March 2007, more than 500 days after Hurricane Wilma hit South Florida, and four (4) months after Chalfonte filed suit against QBE for breach of contract. Further,

CASE NO._____

*Complaint*

the estimate Mr. Sansone produced in March 2007 was just a "preliminary" adjustment of Chalfonte's claim.

25.  QBE maintained that its estimate was a "work in progress" and subject to continuing, further revisions.

26.  QBE's clear delay tactics allowed QBE to indefinitely avoid reaching a settlement with Chalfonte, or providing payment, because QBE claimed it had not determined the value of Chalfonte's loss.

27.  QBE had an affirmative obligation under the insurance contract and Florida law to timely and promptly adjust Chalfonte' claim. Mr. Sansone admitted at trial that QBE had the duty to adjust Chalfonte's claim. However, QBE, as part of its general business practice, did not do so and does not timely adjust claims as a business practice.

28.  QBE failed to timely and promptly adjust or settle Chalfonte's claim, contending, as it typically does as part of its claims handing practices, that the adjustment is "a work in progress" with no completion date. To date, QBE has failed to adjust, settle and/or pay any part of the claim and in keeping with its historical practice, has initiated numerous and repeated delays and other bad faith practices, as set forth herein, in a targeted and concerted effort to avoid paying the valid claim.

29.  Mr. Sansone has not acted in an independent, impartial or fair manner in handling, adjusting and/or determining the value of the claim, and/or has not acted diligently in handling and/or achieving a proper disposition of the claim as required by the adjuster's code of ethics set forth in section 69b-220.201(3), Florida Administrative Code. These ethical violations are *per se* unfair claims handling practices and bad faith on the part of QBE, its adjuster, Interloss and/or its

CASE NO._____

*Complaint*

managing general agent, Florida Intracoastal Underwriters ("FIU"). Further, Mr. Sansone has repeatedly been QBE's corporate representative in depositions and at trials, including in the underlying breach of contract case which was litigated in the United States District Court for the Southern District of Florida, *Chalfonte Condominium, Inc. v. QBE Insurance Corporation*, Case No. 06-81046-CIV-MIDDLEBROOKS/JOHNSON (the "Underlying Action"), and, in that capacity, has acted in a biased manner against Chalfonte and favorably biased toward QBE.

30. On November 8, 2006, Chalfonte sued QBE in the Underlying Action. Chalfonte filed an Amended Complaint on March 6, 2007 alleging claims for Declaratory Judgment (Count I), Breach of Contract (Failure to Provide Coverage) (Count II), Breach of Contract (Breach of Implied Warranty of Good Faith and Fair Dealing) (Count III) and Violation of Section 627.701, Florida Statutes (Count IV). On May 18, 2007 the trial court dismissed Count IV and the case proceeded to trial in August 2007 on the remaining claims.

31. Throughout the Underlying Action, QBE advanced and advocated baseless allegations of misconduct, misrepresenting damages and inflating damages by Chalfonte, all without undertaking the necessary factual investigation to satisfy the standard imposed by Florida law.

32. QBE continued to insist that Chalfonte's damages were simply wear and tear, inflated or non-existent.

33. In the Underlying Action, the jury soundly rejected QBE's pretextual, unfounded and unsupported defenses to liability for breach of the Insurance Contract and on August 29, 2007, rendered a verdict finding QBE liable to Chalfonte for breaches of contract, finding QBE failed to

CASE NO._____

*Complaint*

comply with the wording and type size requirements of §627.701, Florida Statutes for the hurricane deductible, and finding Chalfonte suffered hurricane Wilma damages of approximately $8.1 million.[1] On September 6, 2007, Final Judgment in Chalfonte's favor in the amount of $8,140,099.68 was entered in the Underlying Case[2], and after consideration of post-trial motions, an Amended Final Judgment in Chalfonte's favor in the amount of $7,237,223.88 was entered in the Underlying Case on December 18, 2007[3]. Subsequently, an Order also awarding Chalfonte Attorneys Fees and Costs in the amount of $678,160.60 was entered in the Underlying Case[4].

34. Chalfonte filed, and the Florida Department of Financial Services accepted, a Civil Remedy Notice on January 17, 2007, a true and correct copy being attached as *Exhibit "A"*, putting QBE on notice of among other things, their violations of the following sections of the *Florida Statutes*:

> **A.** **624.155(1)(b)(1)** Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests;
>
> **B.** **626.9541(1)(i)(3)(c)** Failing to acknowledge and act promptly upon communications with respect to claims;
>
> **C.** **626.9541(1)(i)(3)(e)** Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed;
>
> **D.** **626.9541(1)(i)(3)(h)** Failing to clearly explain the nature of the requested information and the reasons why such information is necessary.

---

[1] D.E. 165, Southern District of Florida Case No. 06-81046-CIV-MIDDLEBROOKS/JOHNSON
[2] D.E. 166, Southern District of Florida Case No. 06-81046-CIV-MIDDLEBROOKS/JOHNSON
[3] D.E. 226, Southern District of Florida Case No. 06-81046-CIV-MIDDLEBROOKS/JOHNSON
[4] D.E. 255, Southern District of Florida Case No. 06-81046-CIV-MIDDLEBROOKS/JOHNSON

Rosenbaum Mollengarden Janssen & Siracusa, PLLC
250 Australian Avenue South, Suite 500, West Palm Beach, Florida 33401
Telephone: (561) 653-2900; Facsimile: (561) 820-2542

CASE NO._____
*Complaint*

35.   More than sixty (60) days passed after Chalfonte filed and the Florida Department of Financial Services accepted the Civil Remedy Notice without QBE or FIU acknowledging their liability under the QBE Policy, paying the claim in full, or correcting the circumstances giving rise to the violation.

36.   QBE utilizes a loss ratio bonus system to compensate its general managing agent, FIU and its agent, Brown and Brown, Inc. and their employees. Brown and Brown, Inc. is the parent company and/or close affiliate of FIU. In essence, FIU, Brown and Brown, Inc. and/or their employees are rewarded for keeping loss payments minimized, regardless of the merits of a particular claim.

37.   QBE's wrongful refusal to pay the claim, their unreasonable delays in adjusting the claim, their failure to attempt to settle the claim and/or its routine retention of biased adjusters and other biased experts, constitute a general business practice of bad faith claims handling. QBE certainly could and should have settled this claim had they acted fairly and honestly towards Chalfonte and its unit owners, with due regard for their interests.

38.   In view of QBE's failure to pay any part of the claim, Chalfonte was required to pass and collect large monetary assessments from its unit owners and obtain loans to make repairs.

39.   As a direct and proximate result of QBE's unfair claim settlement practices and/or bad faith claims practices, Chalfonte has suffered damages, including, but not limited to, loan interest, expert witness expenses and other economic damages.

CASE NO._____
*Complaint*

40. QBE's actions to intentionally and knowingly delay and fail to adjust, settle or pay Chalfonte' claim constitute a reckless disregard for Chalfonte's rights as well as a total indifference to QBE's statutory obligations.

## COUNT I – STATUTORY BAD FAITH AGAINST QBE

41. This is an action by Chalfonte against QBE for statutory bad faith, the subject matter of which exceeds $75,000 exclusive of interest, costs and attorneys' fees.

42. Chalfonte realleges the allegations contained in paragraphs 1 through 40 as though fully set forth herein.

43. As a result of the foregoing allegations, whether taken separately or together, QBE violated Section 624.155(1)(b)(1), *Florida Statutes*, by not attempting in good faith to settle Chalfonte's claim when, under all the circumstances, it could and should have done so, had it acted fairly, honestly and with due regard for Chalfonte.

44. Whether taken separately or together, QBE violated Section 626.9451(1)(i), *Florida Statutes*, by the acts alleged above, and by:

   A. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests (Section 624.155(1)(b)(1), *Florida Statutes*);

   B. Failing to adopt and implement standards for the proper investigation of claims (Section 626.9541(1)(i)(3)(a), *Florida Statutes*);

   C. Misrepresenting pertinent facts or insurance policy provisions relating to coverages at issue (Section 626.9541(1)(i)(3)(b), *Florida Statutes*);

   D. Failing to acknowledge and act promptly upon communications with respect to claims (Section 626.9541(1)(i)(3)(c), *Florida Statutes*);

E. Denying claims without conducting reasonable investigations based upon available information (Section 626.9541(1)(i)(3)(d), *Florida Statutes*);

F. Failing to affirm or deny full or partial coverage of claims, and, as to partial coverage, the dollar amount or extent of coverage, or failing to provide a written statement that the claim is being investigated, upon the written request of the insured within 30 days after proof-of-loss statements have been completed (Section 626.9541(1)(i)(3)(e), *Florida Statutes*);

G. Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement (Section 626.9541(1)(i)(3)(f), *Florida Statutes*);

H. Failing to promptly notify the insured of any additional information necessary for the processing of a claim (Section 626.9541(1)(i)(3)(g), *Florida Statutes*); and,

I. Failing to clearly explain the nature of the requested information and the reasons why such information is necessary (Section 626.9541(1)(i)(3)(h), *Florida Statutes*).

45. QBE's actions in its conduct of the claim investigation in this case, and as those actions continued in the Underlying Action with QBE's consent, authority and encouragement, were in reckless disregard for the rights of its insureds and additional insureds and/or caused financial and/or other harm to Chalfonte, and such conduct was specifically intended to injure Chalfonte and to preclude it from any recovery on its claim.

46. The acts complained of in this Complaint constituted QBE's general business practices in that they (a) in several instances were expressions of standard company practices and procedures, (b) are steadfastly proclaimed by QBE to be in conformity with what they contend are standard and good faith claims practices, and, consequently or incidentally, (c) occur with such frequency as to indicate general business practices.

CASE NO._____

*Complaint*

47. As a direct and proximate result of QBE's bad faith, Chalfonte has suffered damages, including but not limited to, financial damages.

48. Chalfonte has employed the undersigned law firm to represent its interests in connection with the policy and this lawsuit, and is obligated to the firm for the payment of its fees.

49. Chalfonte is entitled to an award of reasonable attorneys' fees pursuant to Section 624.155(4), *Florida Statutes*, which provides in pertinent part:

> Upon adverse adjudication at trial or upon appeal, the authorized insurer shall be liable for damages, together with court costs and reasonable attorney's fees incurred by the Plaintiff.

WHEREFORE, Plaintiff, Chalfonte Condominium, Inc., demands judgment against Defendant, QBE Insurance Corporation, for damages, including special damages, together with interest thereon, attorneys' fees pursuant to Section 624.155(4), *Florida Statutes*, punitive damages, costs, and any other relief this Court deems just and proper.

### *JURY TRIAL DEMAND*

Chalfonte demands a trial by jury on all claims, defenses and issues so triable in the entire case.

DATED this 6 day of May, 2010.

(*Signature follows*)

CASE NO._____

*Complaint*

Respectfully submitted,

ROSENBAUM MOLLENGARDEN JANSSEN &
SIRACUSA, PLLC
Attorneys for Plaintiff
250 Australian Avenue South, Suite 500
West Palm Beach, Florida 33401
Tel. (561) 653-2900
Fax (561) 820-2542
Email: drosenbaum@RMJSlaw.com
Email: jsiracusa@RMJSlaw.com
Email: tyaques@RMJSlaw.com

BY: _____
DANIEL S. ROSENBAUM
Florida Bar No. 306037
JOHN M. SIRACUSA
Florida Bar No. 159670
TATIANA B. YAQUES
Florida Bar No. 673048

759351